UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

DAWN G.[1],                                    )
                                               )
            Plaintiff,                         )
                                               )
      v.                                       )      CIVIL NO.  3:19cv181
                                               )
ANDREW M. SAUL,                                )
Commissioner of Social Security,               )
                                               )
            Defendant.                         )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant
Commissioner of Social Security Administration denying Plaintiff's application for Supplemental
Security Income (SSI), as provided for in the Social Security Act.  Section 205(g) of the Act
provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the
transcript of the record including the evidence upon which the findings and decision complained
of are based.  The court shall have the power to enter, upon the pleadings and transcript of the
record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with
or without remanding the case for a rehearing."  It also provides, "[t]he findings of the
[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42
U.S.C. §405(g).

The law provides that an applicant for SSI must establish an "inability to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which can be expected to last for a continuous period of no less than 12 months. . . ."
42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an

_____

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.   The claimant has not engaged in substantial gainful activity since April 11, 2013, the application date (20 CFR 416.920(c)).

2.	The claimant has the following severe impairments: obstructive sleep apnea; low back pain; neck pain; hypertension; polysubstance abuse; alcohol dependence; major depressive disorder; generalized anxiety disorder; borderline personality disorder; history of hip pain; and sacroiliac pain (20 CFR 416.920(c)).

3.	The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 4316.920(d), 416.925 and 416.926).

4.	After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift and carry five pounds frequently and ten pounds occasionally; sit for one hour at a time and up to four to five hours total per eight-hour workday with a sit-stand option for five minutes on the hour; stand for 30 minutes to one hour at a time and for up to three hours total per eight-hour workday; walk for 15 to 30 minutes at one time and for one to two hours totals per eight-hour workday; frequently reach overhead, bilaterally; occasionally operate foot controls; occasionally climb ramps and stairs with a handrail; never climb ladders, ropes, or scaffolds; occasionally balance, bend, stoop, and kneel; never crouch or crawl; no exposure to unprotected heights; occasional exposure to moving mechanical parts; no commercial driving; no exposure to extreme heat or cold; she may use a straight cane for ambulation; and she can tolerate occasional contact with coworkers. supervisors, and the general public.

5.	The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.	The claimant was born on March 1, 1966 and was 47 years old, which is defined as a younger individual aged 45-49, on the date the application was filed (20 CFR 416.963).

7.	The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.	Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform CFR 416.969 and 416.969(a)).

10.	The claimant has not been under a disability, as defnined in the Social Security Act, since April 11, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 73- 83).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to SSI. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on September 27, 2019. On November 7, 2019, the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on November 23, 2019. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was 47 years old at the time she filed her application for benefits and she turned

50 years old five months after the ALJ's decision. She has an eighth grade education (Tr. 137-138) and worked as a deli slicer and an escort driver (Tr. 127).

Dr. Ungar-Sargon has been treating Plaintiff's chronic pain for many years; at least since 2012 (Tr. 489). On March 21, 2013, shortly before Plaintiff filed her current application for benefits, she was seen by Dr. Ungar-Sargon for lower back pain radiating to both thighs and neck pain radiating between the shoulder blades and into the arms (Tr. 423). Her pain increased with sitting, standing, walking, bending, and lifting her arms. The pain in her lower back was worse, rated as 7 on a 10-point pain scale. *Id*. A physical examination revealed straightening of the cervical spine with loss of normal lordosis (curve), spasms and tenderness in the paravertebral muscles of the cervical spine bilaterally, tenderness in the thoracic spine at T4 and T5, tenderness in the rhomboids, positive Gaenslen's test, positive facet loading test, positive Ober's test, positive Pace's sign, deep buttocks pain with internal rotation of the femur, positive straight leg raising test on both sides, positive pelvic compression test, and an antalgic gait (Tr. 425-426). Dr. Ungar-Sargon diagnosed lumbar disc displacement without myelopathy, sacroiliitis, carpal tunnel syndrome, cervical disc displacement without myelopathy, and reflex sympathetic dystrophy ("RSD") of a lower limb (Tr. 426). The pain specialist preformed a sacroiliac injection. *Id*. Plaintiff's medications included Cymbalta and Naproxen (Tr. 424).

On May 9, 2013, Plaintiff reported ongoing back and neck pain with associated headaches; the injection helped her pain only temporarily (Tr. 418). Dr. Ungar-Sargon's examination and diagnoses were unchanged from the prior visit (Tr. 420-421). The following month, Plaintiff described symptoms of neck and mid-back pain, as well as headaches, rating her pain as 5 on a 10-point scale (Tr. 545). An exam documented straightening of the cervical

spine with loss of normal lordosis, spasms and tenderness in the paravertebral muscles of the cervical spine bilaterally, tenderness in the thoracic spine at T4 and T5, tenderness in the rhomboids, positive Gaenslen's test, positive facet loading test, positive Ober's test, positive Pace's sign, deep buttocks pain with internal rotation of the femur, positive straight leg raising test on both sides, positive pelvic compression test, and an antalgic gait (Tr. 547-548).

No changes were noted at the next follow-up with Dr. Ungar-Sargon on July 25, 2013 (Tr. 559-562). That same day, Plaintiff had an EMG of the lower extremities that revealed evidence of chronic right L4-5 radiculopathy (Tr. 818). Subsequent treatment records from Dr. Ungar-Sargon document no improvement in Plaintiff's conditions through January 9, 2014 despite treatment with medication and sacroiliac injections (Tr. 765-768, 760-764, and 756-759). At the latter visit, Dr. Ungar-Sargon added Norco to Plaintiff's other medications (Tr. 757).

On February 20, 2014, Plaintiff reported an onset of numbness in her feet along with her ongoing radiating pain in the neck and back, though the level of her pain had improved somewhat (Tr. 752). On exam, Dr. Ungar-Sargon found straightening of the cervical spine with loss of normal lordosis, spasms and tenderness in the paravertebral muscles of the cervical spine bilaterally, tenderness in the right shoulder, tenderness in the thoracic spine at T4 and T5, tenderness in the rhomboids, positive Gaenslen's test, positive facet loading test, positive Ober's test, positive Pace's sign, deep buttocks pain with internal rotation of the femur, positive straight leg raising test on both sides, positive pelvic compression test, loss of modality in the legs, reduced sensation in the right big toe, positive Tinel's sign bilaterally, and an antalgic gait (Tr. 754-755). The treating pain specialist diagnosed lumbar disc displacement without myelopathy, sacroiliitis, carpal tunnel syndrome, cervical disc displacement without myelopathy, RSD of a

lower limb, fibromyalgia, cervicogenic headaches, and thoracic or lumbosacral neuritis (Tr. 755). Subsequent visits with Dr. Ungar-Sargon documented nearly unchanged findings despite ongoing treatment with medications and injections of the sacroiliac joint, except that Plaintiff no longer demonstrated sensory changes through March 3, 2015 (Tr. 747-751, 742-746, 738-741, 733-737, 728-732, 723-727, 718-722, 713-717, and 708-712).

A CT scan of the lumbar spine on April 1, 2015 showed an L3-4 calcified disc bulge/disc osteophyte complex that was encroaching on the dura with degenerative disc disease at this level; an L4-5 disc bulge; and, an L5-S1 disc bulge with degenerative changes (Tr. 817).

On April 30, 2015, Plaintiff returned to Dr. Ungar-Sargon for ongoing symptoms of pain in her lower back radiating to both hips and thighs (Tr. 703). Her pain was worse with sitting, standing, walking, and bending. *Id.* On exam, the pain specialist found straightening of the cervical spine, tenderness and spasms in the paravertebral muscles of the cervical spine, tenderness in the thoracic spine at T4 and T5, tenderness in the rhomboids, positive Gaenslen's test, positive lumbar facet loading, positive Ober's test, positive Pace's sign, positive straight leg raising test, positive pelvic compression test, positive Trendelenburg's test, and an antalgic gait (Tr. 705-706). Another joint injection was recommended (Tr. 706).

Dr. Gregory French evaluated Plaintiff at the behest of the Social Security Administration on September 29, 2014 (Tr. 622). He described a number of medical issues, including degenerative disc disease of the spine. Physical exam was notable for use of a cane to assist with ambulation and an antalgic/unsteady gait without use of the cane, decreased motion in the lumbar spine, straight leg raising limited to 30 degrees, and weakness of both legs (Tr. 623-624). Dr. French diagnosed low back pain due to arthritis/degenerative disc disease, hypertension, gait

disturbance likely due to neuropathy, and depression/anxiety (Tr. 624). The doctor opined Plaintiff was able to sit 2 hours total, stand 2 hours total, and walk 2 hours total in an 8-hour workday (Tr. 617). She could sit, stand, and walk only 30 minutes at one time. Dr. French also found use of a cane by Plaintiff medically necessary. *Id.*

Plaintiff testified she has lower back pain that is "sharp" (Tr. 150-151). She rated her pain as seven on a ten-point scale (Tr. 150). Plaintiff estimated she can stand for 10 minutes at one time before she needs to sit or lie down (Tr. 107). She can walk two blocks (Tr. 107, 145-146). She is able to sit for 15 to 30 minutes at a time (Tr. 107, 146). She uses a cane to ambulate both when she is home and out (Tr. 137). Plaintiff stated that sometimes she feels shaky and will drops things (Tr. 147).

Plaintiff lives with her boyfriend (Tr. 136). She does not drive; either someone in her family drives her where she needs to go or she uses public transportation (Tr. 139). Plaintiff is able to care for her own hygiene with help (Tr. 147). She has a home health aide that helps her three days a week with bathing, shaving, and cooking (Tr. 147-148). Plaintiff stated she can wash dishes for short periods of time (Tr. 148). She has help doing laundry. She can dust, but cannot mop. Plaintiff attends church once a week. *Id.*

John A. Pella, M.D., testified at Plaintiff's second hearing. Dr. Pella opined Plaintiff can lift/carry 10 pounds; sit for one hour at a time and 4 to 5 hours total in an eight-hour workday with a sit/stand option with the need to stand for five minutes after every hour of sitting; stand for 30 to 60 minutes at a time and 2 to 3 hours total in an eight-hour workday; walk 15 minutes to 30 minutes at a time and 1 to 2 hours total in an eight-hour workday with use of a straight cane to ambulate; frequent reaching and pushing/pulling; occasional use of foot controls; "no stairs or

handrails"; no climbing ladders or scaffolding; occasional balancing; no crouching, crawling, or exposure to unprotected heights; no more than occasional exposure to moving mechanical parts; no commercial driving; and, no exposure to extreme cold or heat (Tr. 119).

James Brooks, Ph.D., also testified at Plaintiff's second hearing. Dr. Brooks opined that Plaintiff was mentally limited to tolerating no more than occasional contact with co-workers, supervisors, and the public (Tr. 126).

A vocational expert ("VE") testified that if an individual of Plaintiff's age, education, and work history was limited, "[t]aking into consideration the limitations alluded by Drs. Pella and Brooks," she could not perform Plaintiff's past work (Tr. 127). The VE then stated that such an individual could work as a document preparer, a lens inserter, and a touch-up circuit board assembler (Tr. 127-128). However, on cross-examination the VE testified that if an individual could sit for up to 5 hours total and stand/walk 2 hours total, one day a week, she could not sustain full-time work, even if she could perform a full 8 hour workday the other 4 days of the week (Tr. 128-129). The VE also stated that if an individual could sit 4 hours total and stand 2 hours total during the first week at work, she would be unable to sustain the job (Tr. 129-130).

In a decision dated October 2, 2015, the ALJ found that despite severe impairments of obstructive sleep apnea, low back pain, neck pain, hypertension, polysubstance abuse, alcohol dependence, major depressive disorder, generalized anxiety disorder, borderline personality disorder, a history of hip pain, and sacroiliac pain (Tr. 73), Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work except she could sit for one hour at a time and up to five hours total with a sit-stand option for five minutes every hour during an eight-hour workday; stand for thirty minutes to one hour at a time and up to three hours total

during an eight-hour workday; walk for fifteen to thirty minutes at one time and for one to two hours total during an eight-hour workday; frequently reach overhead; occasionally operate foot controls, balance, bend, stoop, and kneel; never crouch or crawl; no exposure to unprotected heights; occasional exposure to moving mechanical parts; no commercial driving; no exposure to extreme heat or cold; use of a straight cane for ambulation; and, tolerating no more than occasional contact with co-workers, supervisors, and the general public (Tr. 75). Based on this RFC, the ALJ conceded Plaintiff was unable to perform her past relevant work (Tr. 81), but found she could perform other work as a document preparer, a lens inserter, and a touch-up circuit board assistant (Tr. 82-83).

In support of remand, Plaintiff first argues that the ALJ failed to properly weigh the medical opinion evidence in determining Plaintiff's RFC. As part of the ALJ's finding that Plaintiff can sit for one hour at a time and up to five hours total with a sit-stand option for five minutes every hour during an eight-hour workday; stand for thirty minutes to one hour at a time and up to three hours total during an eight-hour workday; walk for fifteen to thirty minutes at one time and for one to two hours total during an eight-hour workday, the ALJ purported to give "great weight" to the testimony from nonexamining medical expert Dr. Pella (Tr. 81). The ALJ also stated that he gave partial weight to the opinions from examining consultant Dr. French in making this finding. *Id.*

However, as Plaintiff points out, the ALJ failed to explain critical differences between the RFC he found for Plaintiff and some of the restrictions described by Drs. Pella and French in Plaintiff's ability to sit, stand, and walk, which are dispositive issues in this case. Dr. Pella opined Plaintiff can sit for only 4-5 hours total and stand 2-3 hours total during an 8-hour workday (Tr.

119) and Dr. French opined Plaintiff can sit for only 2 hours total, stand for 2 hours total, and walk for 2 hours total in an 8-hour workday (Tr. 617). The ALJ, on the other hand, concluded that Plaintiff can sit for 5 hours total, stand 3 hours total, and walk one to two hours total in an eight-hour workday (Tr. 75) without any explanation for why he found Plaintiff can function at this level.

The ALJ's failure to address the opinions that found Plaintiff more limited is error since "an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Rowan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (holding that the ALJ may not ignore an entire line of evidence that is contrary to his determination). The Commissioner's own Regulation states that the ALJ "will evaluate every medical opinion" regardless of the source. 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive"). *See also* Social Security Ruling ("SSR") 96-8p (1996 WL 374184) (when an RFC conflicts with a medical source opinion, the ALJ "must explain why the opinion was not adopted"); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he [Commissioner's] attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper").

The ALJ's failure to address the more limiting RFC described by Drs. Pella and French was not harmless error. The government's own vocational expert ("VE") testified that even if Plaintiff had minimally more restrictive limitations to be able to sit for up to 4 to 5 hours total and stand/walk 2 hours total, one day a week, consistent with the testimony from Dr. Pella, she could not sustain full-time work, even if she could perform a full 8 hour workday the other 4 days of the week (Tr. 128-129). Alternatively, the VE stated that if an individual could sit for up

11

to 4 hours total and stand 2 hours total during the first week at work, again consistent with testimony from Dr. Pella, she would be unable to sustain the job (Tr. 129-130). Thus, it is clear that the opinions from Dr. French that described even greater restrictions sitting, standing, and walking would preclude Plaintiff from working. SSR 96-8p, supra, indicates that a finding of "disabled" is required for an individual who cannot sit, stand, and walk a combined 8 hours a day, 40 hours a week on a sustained basis. Neither the testimony from Dr. Pella, nor the more limiting restrictions from Dr. French, are consistent with a finding that Plaintiff can perform sedentary work activities in such a context. The ALJ's failure to address the opinions within this framework was error as the ALJ did not credit any other medical evidence on Plaintiff's functioning in a work environment.

The ALJ's failure to even minimally address all the findings from the government's own consultants requires remand as those assessments are consistent with a finding that Plaintiff cannot perform any work. As the Seventh Circuit has aptly stated regarding opinions from examining consultants, such as Dr. French here, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled, as happened here, can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). *See also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (it is "implausible" to believe that a medical source who evaluated a claimant at the request of the Social Security Administration would sympathize with a claimant unless the individual was truly disabled). This case is even more compelling than *Beardsley* and *Bjornson* as both examining and non-examining consultants who gave opinions at the behest of the Administration described disabling limitations for Plaintiff.

In response, the Commissioner argues that the ALJ's finding that Plaintiff can sit for one hour at a time and up to five hours total with a sit-stand option for five minutes every hour during an eight-hour workday; stand for thirty minutes to one hour at a time and up to three hours total during an eight-hour workday; and, walk for fifteen to thirty minutes at one time and for one to two hours total during an eight-hour workday is wholly consistent with the testimony from non-examining medical expert Dr. Pella.

However, the Commissioner's argument relies on misstatements of facts by the ALJ. Dr. Pella testified that Plaintiff can sit for only 4-5 hours total and stand 2-3 hours total during an 8-hour workday (Tr. 119). The ALJ, on the other hand, concluded that Plaintiff can sit for 5 hours total, stand 3 hours total, and walk one to two hours total in an eight-hour workday (Tr. 75) without any explanation for why he found Plaintiff can function at this level rather than at the level described by Dr. Pella. The ALJ erred by selectively relying on Dr. Pella's testimony on Plaintiff's functioning without any explanation for why he did so. Doing so violates both the Commissioner's own policy ruling, Social Security Ruling ("SSR") 96-8p (1996 WL 374184) (directing that when an RFC conflicts with a medical source opinion, the ALJ "must explain why the opinion was not adopted") and prevailing Seventh Circuit law. *See Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[T]he [Commissioner's] attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper"); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014)(finding ALJ erred by engaging in a "sound-bite" approach to the record by identifying normal findings supporting the conclusion she reached and ignoring related evidence undermining that conclusion) citing *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("But it is equally clear that an ALJ must weigh all the evidence and may not

ignore evidence that suggests an opposite conclusion"). While the ALJ may have had a reason for agreeing with some, but not all, of the opinions from Dr. Pella, he failed to articulate any such reason in his decision, which precludes effective judicial review. *Cf. Clifford v. Apfel*, 227 F.3d 863, 870-871 (7th Cir. 2000).

The ALJ made similar a similar error with respect to the opinions from the Administration's own examining physician Dr. French. The Commissioner argues that the ALJ did not err in considering Dr. French's opinions because he "recognized" the opinions from Dr. French on Plaintiff's ability to sit, stand, and walk but gave greater weight to the opinions from Dr. Pella.

Yet the Commissioner does not explain why the ALJ found the opinions from Dr. Pella were entitled to greater weight than those from Dr. French. This is because the ALJ never articulated a single reason for this determination. This was critical since the Commissioner's Regulations that apply to Plaintiff's claim recognize that the opinions from examining sources are generally entitled to more weight than the opinions from non-examining sources. 20 C.F.R. § 416.927(c)(1). Because there is no dispute that the government's vocational expert testified that an individual of Plaintiff's age, education, and work history with all the restrictions described by Drs. French and Pella cannot work (Tr. 128-130), the ALJ's failure to properly consider either opinion was not harmless error. Accordingly, remand is required on this issue.

Next, Plaintiff argues that the ALJ erred by mechanically applying the age categories in the Medical-Vocational Guidelines. Plaintiff contends that even if the ALJ did not err in determining Plaintiff's sedentary RFC as discussed above, he still should have found her disabled at the time the decision was issued in this case. A finding of disabled is directed for Plaintiff

under the Commissioner's Medical-Vocational Guidelines (the "grids") as of the time she turned

50 years old based on the ALJ's conclusion that she is restricted to sedentary work and her

limited education and unskilled work history. *See* 20 C.F.R. Subpart P, Appendix II, Rule 201.09

(directing a finding of disability for an individual limited to sedentary activities who is age 50-54

with a limited education and unskilled or no work history).

Plaintiff did not turn 50 years old until March 2016 (Tr. 136), five months after the

ALJ's decision (Tr. 68). However, the Commissioner has directed ALJs to consider applying a

higher age category in cases where a finding of disability would be directed for an individual

who is a few days to a few months from reaching the next age category. 20 C.F.R. § 416.963(b)

and SSR 83-10 (1983 WL 31251).

Courts in the Seventh Circuit have repeatedly found error when the ALJ fails to indicate

if consideration was given to applying a higher age category under the grids with similar facts.

*See e.g. John P. v. Saul*, No. 2:19cv0004, 2019 WL 4072118 *6 (N.D.Ind. Aug. 28, 2019) (Lee,

J.)(directing ALJ on remand to consider applying Medical-Vocational Guidelines in a

non-mechanical manner when the claimant was four months shy of changing age category);

*Pittenger v. Berryhill*, No. 2:17-cv-230, 2018 WL 4026291 *6 (N.D.Ind. Aug. 23, 2019)

(collecting cases that have held up to six months prior to a change in age categories requires

consideration of non-mechanical application of the grids). The ALJ failed to indicate if he

considered applying the grids in a non-mechanical fashion in contravention of prevailing law on

the subject.

In response, the Commissioner argues that the ALJ did not err by failing to consider if

Plaintiff's age created a borderline situation that warranted applying a higher age category

because there is no evidence of vocational "adversities" that would justify using a higher age category for Plaintiff (citing HALLEX I-2-2-42 and POMS DI 25015.006).

Clearly, the Commissioner's argument is without merit. He fails to cite to anything in the Regulations, Rulings, or binding case law that a claimant must present evidence of vocational adversities for a borderline age category to be considered by the ALJ. Multiple decisions from this District have found reversible error without a claimant presenting such evidence.

The Seventh Circuit has declined to address if HALLEX provisions have any binding authority on a reviewing Court. *Davenport v. Astrue*, 417 Fed.Appx. 544, 547 (7th Cir. 2011). However, Courts that have considered an argument identical to the one made here by the Commissioner have repeatedly rejected it as requiring that a claimant show vocational adversity for an ALJ to consider if a borderline age situation exists. *See e.g. Terri S. v. Berryhill*, No. 1:18-cv-00940-RLY-TAB *3-4 (S.D.Ind. Nov. 6, 2018); *Pelch v. Colvin*, No. 14 C 7021, 2016 WL 727208 *8 n. 4 (N.D.Ill. Feb. 22, 2016); *McKay v. Colvin*, No. 15 C 9522, 2016 WL 6432582 *6-7 (N.D.Ill. Oct. 31, 2016).

Furthermore, the Commissioner incorrectly states that Plaintiff has no vocational adversities. She has only an eighth grade education (Tr. 137-138) and the ALJ conceded she cannot perform her past work (Tr. 81). The ALJ also did not find she has any transferable skills from her past work. Moreover, she is not simply limited to the full range of sedentary work, which directs a finding of disability based on the higher age category, but is further restricted to: (1) sit for one hour at a time and up to five hours total with a sit-stand option for five minutes every hour during an eight-hour workday; (2) stand for thirty minutes to one hour at a time and up to three hours total during an eight-hour workday; (3) walk for fifteen to thirty minutes at one

time and for one to two hours total during an eight-hour workday; (4) frequently reach overhead; (5) occasionally operate foot controls, balance, bend, stoop, and kneel; never crouch or crawl; (6) no exposure to unprotected heights; (7) occasional exposure to moving mechanical parts; (8) no commercial driving; no exposure to extreme heat or cold; (9) use of a straight cane for ambulation; and, (10) tolerating no more than occasional contact with co-workers, supervisors, and the general public. Thus, Plaintiff clearly has vocational adversities based on her limited education and work history, as well as the extensive non-exertional restrictions the ALJ conceded are present. Accordingly, remand is warranted on this issue also.

Lastly, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility The Commissioner's Regulations describe a two-step process when evaluating pain and other subjective testimony. First, the ALJ must determine whether the symptoms alleged are supported by objective medical evidence that could reasonably produce the symptoms alleged. Second, the ALJ must evaluate the credibility of the claimant's subjective statements as to the intensity, persistence, and functionally limiting effects. SSR 96-7p (1996 WL 374286)20 interpreting 20 C.F.R. § 416.929. A claimant must provide credible testimony and objective evidence to qualify for disability insurance benefits for allegations of disabling pain *(Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir. 1991)). However, objective evidence need not prove the severity of the claimant's testimony, only that the claimant has an impairment capable of causing the complaints (*Veal v. Bowen*, 833 F.2d 693, 698 (7th Cir. 1987)).

All of the evidence in the case record must be considered in order to determine whether a claimant's subjective complaints are credible. *See* SSR 96-7p interpreting 20 C.F.R. § 416.929. SSR 96-7p lists the factors that the ALJ must consider: (1) the individual's daily activities; (2) the

location, duration, frequency, and intensity of the individual's pain or other symptoms; (3)

factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side

effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or

other symptoms; (6) any measures other than treatment the individual uses or has used to relieve

pain or other symptoms; and, (7) any other factors concerning the individual's limitations and

restrictions due to pain or other symptoms.

The ALJ conceded that Plaintiff's "medically determinable impairments could reasonably

be expected to cause the alleged symptoms" but found her statements concerning the intensity,

persistence, and limiting effects of her symptoms "not entirely credible for the reasons explained

in this decision" (Tr. 76). In apparent support of this conclusion, the ALJ noted that some

physical exam findings in the record are normal (Tr. 77, 78). He also noted that Plaintiff received

only "conservative" treatment (Tr. 77). In addition, the ALJ focused on evidence that Plaintiff

reported 80% pain relief following injection. *Id*. Finally, he found Plaintiff's allegations

inconsistent with evidence that she can spend time with her boyfriend and family, including

watching her grandchildren, reading, caring for pets, going to church, and performing some

household chores (Tr. 80).

Plaintiff contends that the ALJ's credibility determination is "patently wrong." *Prochaska

v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Plaintiff points out that the fact that some medical

findings in the record are normal (while there is no dispute that others are not) is what allows for

the differential diagnosis of one disorder from another, but this does not establish a particular

level of functioning. In all examinations there will be "some" normal findings. A layman, like an

ALJ, is simply not competent to say that what he or she perceives as a "normal" finding in isolation is contradictory to a diagnosis or functional capacity found by doctors, who all agree Plaintiff is more limited than found by the ALJ. What the ALJ deems "normal" or "mild" cannot be the sole or primary basis for the rejection of a claimant's subjective statements. This is particularly true when the analysis focuses on the normal findings while other abnormal findings support a finding of disability. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (finding ALJ erred by engaging in a "sound-bite" approach to the record by identifying normal findings supporting the conclusion she reached and ignoring related evidence undermining that conclusion) citing *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("But it is equally clear that an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion").

It is for these reasons that Judge Posner wrote that ALJs should avoid the temptation to play doctor since "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Furthermore, 20 C.F.R. § 416.929(c)(2) states that a claimant's allegations cannot be rejected "because the available objective medical evidence does not substantiate your statements." *See also* SSR 16-3p (2016 WL 1119029) ("[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques"). Moreover, subjective "complaints…need not be confirmed by diagnostic tests." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (collecting cases). *See also Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (finding that a "recurrent error made by the Social Security Administration's administrative law judges" is the conclusion that disabling symptoms must be substantiated by particular "objective" testing).

Plaintiff also contends that the ALJ erred by critiquing Plaintiff's treatment. He noted that Plaintiff's treatment has been "conservative." However, Plaintiff has repeatedly received steroid injections into the spine and been prescribed Norco, an opiate. These forms of treatment are not given lightly. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014) (expressing doubt that steroid injections are "conservative" treatment); *Diaz v. Astrue*, No. 08-CV-5006 (JG), 2009 WL 2601316 *5 (E.D.N.Y. Aug. 24, 2009) ("it seems odd to characterize [Plaintiff's] treatment regime as conservative in light of the fact that it involved frequent use of corticosteroids, a medication with potentially severe side effects"). *Cf. Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (finding it is improbable Plaintiff was "a good enough actress to fool a host of doctors…into thinking she suffers extreme pain; and…that this host of medical workers would prescribe drugs and other treatment for her if they thought she were faking her symptoms"). The ALJ also inappropriately focused on the evidence that Plaintiff temporarily improved following steroid injections without considering the impact of her residual symptoms. Only one of the records cited by the ALJ noted that Plaintiff had 80% relief of her pain and she had decreased muscle spasms following injection (Tr. 713). Moreover, by the next visit there was no indication that Plaintiff's pain continued to be significantly improved (Tr. 708).

Plaintiff argues that the ALJ erred by discounting Plaintiff's allegations based on evidence she can perform some activities of daily living. Plaintiff offered uncontradicted testimony that she is able to care for her own hygiene only with help (Tr. 147). Indeed, she has a home health aide that helps her three days a week with bathing, shaving, and cooking (Tr. 147-148). She can wash dishes for only short periods of time (Tr. 148). In addition, she has help doing laundry. She can dust, but cannot mop. And, she attends church only once a week. *Id.* Thus, it is unclear how

Plaintiff's activities, performed sporadically with significant help, are relevant to what she could do if she was placed in a competitive work environment 8 hours a day, 40 hours a week. *See e.g. Bjornson*, 671 F.3d at 647 (collecting cases for holding that the failure of ALJs to recognize the difference in performing activities of daily living with flexibility and performing to the standards required by an employer "is a recurrent, and deplorable feature of opinions by administrative law judges in social security disability cases"); *Hughes v. Astrue*, 705 F.3d 276, 278-279 (7th Cir. 2013) (collecting cases for holding that "We have remarked the naivete of the Social Security Administration's administrative law judges in equating household chores to employment," including doing laundry, taking public transportation, and shopping).

This court finds that the ALJ's credibility determinations are patently wrong and, therefore, remand is necessary on this issue as well.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

Entered: December 23, 2019.

s/ William C.  Lee
William C. Lee, Judge
United States District Court